## 41614. CHICOLA v. THE STATE.
(325 SE2d 379)

CLARKE, Justice.

Adelaide Chicola was convicted of the murder of her husband Steven Chicola and sentenced to life imprisonment. She appeals from this conviction. We affirm.[1]

Steven Chicola was shot five times at his home in Cobb County. His dead body was placed in a van and driven to another location on the night of October 25, 1980. The next day neighbors observed Adelaide Chicola, her teenage son, and her friend Barbara Pritchett

---

[1] The murder occurred October 25, 1980. The date of conviction was September 29, 1981. Appellant filed a motion for new trial October 16, 1981, and amended this motion February 9, 1984. The motion was overruled July 5, 1984. A notice of appeal was filed July 31, 1984. The transcript was filed September 17, 1984. On October 15, 1984, the appeal was docketed in this court. It was submitted for decision November 30, 1984.

scrubbing the carport and driveway, raking the yard and burning leaves. On the night of the shooting neighbors had observed figures cleaning all surfaces in the kitchen.

When police came to interview appellant on the day the body was discovered, she said that she had not seen him since between 5:30 p.m. and 6:00 p.m. on October 25th. After an anonymous phone tip that she had been seen doing extensive cleaning on the night of the shooting and the next day, police returned to the house and noticed what appeared to be blood stains on a light switch. Police then obtained a search warrant and after a thorough search, found extensive evidence of the shooting in the kitchen of the home. Appellant was arrested and brought to trial.

At trial appellant testified that her husband had been killed by an exterminator, Charles Kinsey, who had come to the house to spray for pests. She said that the shooting occurred after the two engaged in an argument. She admitted that she had taken steps to conceal the death, but testified that she did so out of sympathy for Kinsey, who had shot in self-defense. Charles Kinsey was called as a defense witness and invoked his fifth amendment privilege not to testify. He later negotiated a plea of guilty to voluntary manslaughter and was recalled by the state.

The neighbor who had provided the anonymous phone tip testified at trial that he heard fighting from the Chicola house on the night before the shooting and observed Steven Chicola throwing furniture in the yard. He heard four gun shots from the Chicola house on the evening of the shooting, and as he heard the shots he heard Steven Chicola scream "No, no, Addie, please no, not this." He also testified about the extensive clean-up and repair activities of appellant, Barbara Pritchett, and appellant's son Brian. The neighbor's daughter testified that she had observed many of the events of the day. She further testified that on the afternoon of the day of the shooting Brian had asked her father if he had a gun for sale, indicating that his mother wished to buy one. The neighbor testified that during the afternoon he had been working in his garage and that Brian had been in and out of the garage all day, seeming upset and nervous. As he heard the shots and started toward the garage door, Brian came in and told him to get back inside. When the neighbor asked if his folks were having trouble again, Brian said, "I don't know and I don't want to know. I'm not going over there to find out." Brian then left, saying he felt sick, and the neighbor went into his yard and stood, hidden by a tree, observing the Chicola house. He saw figures in the kitchen, one of whom appeared injured. Later he saw the lights to Steven Chicola's van on and still later he noticed that the van had been driven away. That evening and the next day he watched as appellant, Barbara Pritchett and Brian scrubbed the kitchen, carport

and driveway, replaced a screen, and raked and burned leaves in the yard.

After the trial had begun, Barbara Pritchett revealed the existence of a tape recording which indicated that Charles Kinsey had shot Steven Chicola. The state obtained a continuance during which a plea bargain was struck with Kinsey. He pled guilty to voluntary manslaughter and testified against appellant. Although he continued to maintain that he killed Chicola in self-defense, he did testify that appellant and Barbara Pritchett hired him to kill Chicola as he was spraying the house for pests and that he had come to the house with spraying equipment and a gun on the night of the shooting.

1. The evidence in this case is sufficient to meet the test of Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Therefore, the first enumeration of error is without merit. Evidence of the planning for the death of Steven Chicola, observations of the neighbors, the cry of "No, no, Addie, please no, not this" by Chicola, and the frantic efforts to conceal the shooting are all evidence from which the jury could have concluded that appellant participated in the planning and execution of a murder and that there was no justification.

2. In her second enumeration of error appellant contends that she was denied her constitutional right of confrontation under the sixth and fourteenth amendments to the United States Constitution in that her attorney was not allowed to cross-examine Charles Kinsey about conversations with his attorney. Appellant's attorney asked Kinsey whether before he came to the District Attorney's office on September 23, 1981, and heard Barbara Pritchett's tape he had talked with his attorney about the death of Steven Chicola. When Kinsey's attorney objected the court ruled that any communication was privileged. The court asked if appellant's attorney would like to be heard further outside the presence of the jury. At this point appellant's attorney said no and elected to go on to another line of inquiry.

In Georgia a party has, aside from his right to confront witnesses against him under the sixth and fourteenth amendments to the United States Constitution, a statutory right to a thorough and sifting cross-examination of witnesses. OCGA § 24-9-64. However, the attorney-client privilege prevents inquiry into communications between attorney and client. OCGA § 24-9-21. Appellant argues that because Kinsey invoked this privilege she was prevented from exploring the plea bargain agreement. In fact, Kinsey was questioned extensively about the plea bargain and later the court permitted the defense to ask him if he had talked with his attorney during the recess without going into the content of any conversation. At no time did defense counsel offer to show the court what questions he intended to ask. Further, the line of questioning involving communications which the

court did not allow explored was voluntarily abandoned. Therefore, we have nothing before us to review. *Johnson v. State,* 158 Ga. App. 333 (280 SE2d 379) (1981). Moreover, since the jury was informed of the plea bargain, appellant was not harmed by their not hearing testimony as to communications between the attorney and Kinsey concerning the plea bargain.

The other instances of curtailment of cross-examination involve no error. In one instance the court in fact allowed the testimony. In the case of exploration of Kinsey's earlier decision to invoke his privilege against self-incrimination, appellant's attorney agreed to a stipulation that the jury be informed that he had earlier invoked the fifth amendment outside the presence of the jury. Therefore there is no merit to the contention that appellant's right to confrontation was erroneously curtailed.

*Judgment affirmed. All the Justices concur, except Smith, J., not participating.*

DECIDED FEBRUARY 8, 1985.

*August F. Siemon III,* for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Assistant District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn,* for appellee.